**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DR. LINDA NOEL-BATISTE,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　Civil Action No. 3:12cv00826–HEH
　　　　　　　　　　　　　　　　　　)
VIRGINIA STATE UNIVERSITY,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　)


## MEMORANDUM OPINION
### (GRANTING DEFENDANT'S MOTION TO DISMISS)

THIS MATTER is presently before the Court on a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Virginia State University

("VSU") on November 9, 2012. (ECF No. 4.)[1] The matter has been fully briefed. The

Court will dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before the Court, and oral argument would not aid

in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth herein, VSU's Motion to Dismiss will be granted. Claim

I will be dismissed with prejudice. Claims II and III will be dismissed without prejudice.

---

[1] Defendant's Motion to Dismiss was first filed in Chesterfield County Circuit Court as
Defendant's Special Plea in Bar, Demurrer And/Or Motion to Dismiss. VSU removed the case
to this Court on November 9, 2012. On November 28, 2012, the Court ordered that the Motion
to Dismiss, originally attached as an exhibit to the Notice of Removal (ECF No. 1), be docketed
as a separate entry. (ECF No. 3.)

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to her.[2] *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Viewed in this manner, the alleged facts are as follows.

Plaintiff is an African-American female with a PhD. (Compl. at ¶ 1.) In 2007, Dr. Carolyn Wilson hired Plaintiff as an Associate Professor of Administrative and Organizational Leadership in the VSU Graduate and Professional Education Program. (*Id.* at ¶¶ 2–3.) Plaintiff orally accepted the position at the offered salary of $72,500.00. (*Id.* at ¶¶ 4–5.) Two weeks later, Dr. Green[3] informed Plaintiff that her salary had been reduced to $65,000.00. (*Id.* at ¶ 7). Plaintiff received no explanation for the change from Dr. Green and reported the salary reduction to Dr. Green's supervisor, Dr. W. Weldon Hill, Dean of the School of Liberal Arts and Education. (*Id.* at ¶¶ 8–9.) Plaintiff was unable to secure another professorship due to the timing of this change and began working at VSU in August, 2007. (*Id.* at ¶ 10.) Plaintiff's salary has remained unchanged. (*Id.* at ¶ 57.) According to Plaintiff, there are many other "faculty

---

[2] Plaintiff originally filed this action in Virginia Circuit Court as a Motion for Judgment. The Court construes Plaintiff's Motion for Judgment as a Complaint for purposes of disposing of this matter.

[3] Throughout the Complaint, Plaintiff references various individuals by only the prefix "Dr." and the individual's last name. The Court infers that these individuals are faculty of VSU, but cannot guess as to which position or title each individual holds.

professors"[4] at VSU receiving an annual salary of $72,500.00. Most of these professors are male and on friendly terms with Dr. Green. (*Id.* at ¶ 56.)

Dr. Green reportedly began harassing Plaintiff in 2007. (*Id.* at ¶ 11.) For several months, Dr. Green importuned Plaintiff about a student named Jill Hybner, forcing her to "water down" the student's coursework and to give her a higher grade than she had earned. (*Id.* at ¶¶ 12, 14.) Dr. Green allegedly threatened to fire Plaintiff after "demoralizing and humiliating" her during a meeting with Hybner and Harriet Wynn.[5] (*Id.* at ¶ 12.) When Plaintiff questioned Dr. Green's decision to allow Wynn to be present during such a meeting, Dr. Green allegedly became outraged, shut the door on Plaintiff, and threatened to go to the "University Attorney" about her. (*Id.* at ¶ 16.) Plaintiff reported these events to Drs. Hill, Norman, and Thomas, but no action was taken against Dr. Green. (*Id.* at ¶¶ 12–17.)

Plaintiff claims that in several instances Dr. Green displayed favoritism toward Claire Robinson and Donna Jones-Miles.[6] Dr. Green allegedly supported their handling of events regarding Hybner and took no action after finding out that Jones-Miles wrote a letter complaining about Plaintiff on Hybner's behalf. (*Id.* at ¶ 13.) On another occasion, Dr. Green took no action after discovering Jones-Miles had lied and falsely complained about Plaintiff's pedagogy. (*Id.* at ¶¶ 18–19.) Dr. Green also refused to take action when Jones-Miles presented Plaintiff's academic idea as her own. (*Id.* at ¶ 37.) Plaintiff

---

[4] Plaintiff uses the term "faculty professors" in her Complaint with no further elaboration as to what she means or who comprises this group. The Court interprets the term as a generic reference to professors at VSU.
[5] The Court infers from the allegations that Harriet Wynn is also a member of the VSU faculty.
[6] While Plaintiff identifies Claire Robinson as the "department chair," the Court infers that Donna Jones-Miles is also a member of the VSU faculty.

3

asserts that Robinson and Jones-Miles are Dr. Green's "lackeys" and refers to them collectively as the "Education Gang." (*Id.* at ¶¶ 21, 23.)  Plaintiff contends that she has been ostracized by the "Education Gang." (*Id.* at ¶ 24.)  These incidents were reported to Drs. Beavers, Christian, Norman, and Thomas and no action was taken against Dr. Green. (*Id.* at ¶¶ 13, 18–21, 24–25, 37.)

Plaintiff alleges that in 2007 Dr. Green routinely scheduled unnecessary meetings for Plaintiff and threatened to change her contract again. (*Id.* at ¶¶ 21–22.)  These instances were reported to Drs. Norman and Thomas. (*Id.* at ¶ 21–23.)  In 2008, Plaintiff reported to Dr. Norman that Dr. Green requested that Plaintiff attend a conference. (*Id.* at ¶ 27.)  The administrative assistant had advised Plaintiff that all expenses had been paid, but when Plaintiff arrived at the conference Dr. Green had not paid her registration fee. (*Id.*)  In 2010, Dr. Green purportedly looked through Plaintiff's review portfolio, which is against VSU policy. (*Id.* at ¶ 38.)  Plaintiff reported this to Drs. Beavers and Kanu. (*Id.*)

Plaintiff also claims that she was denied funding to attend a conference, excluded from a recognition ceremony, denied the opportunity to participate on "the STEM grant," and prevented from starting a student chapter of "ASCD."[7]  Plaintiff attributes each of these instances to Dr. Green and reported these instances to Drs. Beavers and Kanu. (*Id.* at ¶¶ 33, 35–36, 41.)

Although Plaintiff ultimately achieved tenure, she alleges that Dr. Green attempted to prevent her tenure by requesting that negative information be included in Dean's

---

[7] Throughout the Complaint, Plaintiff uses various acronyms without clarifying their meaning or significance.  Presumably, such acronyms are specific to and common within Plaintiff's academic field.

reports, asking Dr. Kanu to withhold his support for Plaintiff's tenure application, and filing a falsified student complaint about Plaintiff's teaching techniques. (*Id.* at ¶¶ 42–48, 53, 55.) Plaintiff reported these incidents to Drs. Kanu, Hill, and Wheelen, and Julia Walker.[8] (*Id.*)

In 2012, Plaintiff filed a formal complaint with VSU regarding the purported harassment and workplace hostility. (*Id.* at ¶¶ 49–50.) Five days after filing the complaint, a letter damaging to Plaintiff's reputation circulated throughout VSU. (*Id.* at ¶ 51.) According to Plaintiff, it was determined that Dr. Green wrote the letter in response to her complaint. (*Id.* at ¶ 52.) On May 15, 2012, Plaintiff met with Dr. Hill and others to discuss the intimidation, harassment, and hostile environment. (*Id.* at ¶ 54.)

Plaintiff's Complaint in the present matter was filed on September 27, 2012 in the Chesterfield County Circuit Court and removed to this Court on November 9, 2012. Plaintiff alleges breach of contract and two violations of the Civil Rights Act of 1964 ("Title VII"): (1) creation and maintenance of a hostile work environment, and (2) violation of the Equal Pay Act ("EPA"). Defendant responded and Plaintiff has replied. This matter is ripe for disposition.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only

---

[8] The Court infers that Julia Walker is another member of the VSU faculty.

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

VSU properly removed this case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. The federal law claims alleged in the Complaint allow this Court to exercise supplemental jurisdiction over the alleged state law claim because they all arise from "a common nucleus of operative fact." *United Mine Workers Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367. As this case was originally filed in a Virginia Circuit Court, this Court will apply Virginia law in adjudicating the request for relief under Virginia law. *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

## III. DISCUSSION

### A. Claim I: Breach of Contract

Plaintiff alleges VSU breached her employment contract by reducing her salary to $65,000.00 after she orally accepted an offer for the Assistant Professor position with a salary of $72,500.00. (Compl. at ¶¶ 3–5, 7.) VSU urges the Court to dismiss the breach of contract claim because Plaintiff failed to follow the required procedure for bringing such a claim. (Def.'s Special Plea in Bar of Sovereign Immunity at 1, ECF No. 4.)

VSU is a constituent entity of the Commonwealth of Virginia. *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 539 (E. D. Va. 2007). As an agent of the Commonwealth, claims such as Plaintiff's are prohibited by sovereign immunity. *Id.* at 540. Virginia Code § 2.2–814 waives the Commonwealth's immunity as to breach of contract claims if certain procedures are followed. *Amaram*, 476 F. Supp. 2d at 539.

Under Va. Code § 2.2–814(A), any person making a pecuniary claim against the Commonwealth upon any legal ground, is required to present such claim "to the head of the department, division, institution or agency of the Commonwealth responsible for the alleged act or omission which, if approved, gives rise to the claim." Alternatively, such claims may be presented to the Comptroller. Va. Code § 2.2–814(A). Only once the Comptroller or authorized party has denied the claim, may the claimant seek redress in circuit court. Va. Code § 8.01–192. A failure to comply with these procedures leaves intact the Commonwealth's immunity, and therefore, results in dismissal for lack of subject-matter jurisdiction. *Amaram*, 476 F. Supp. 2d at 540. This limited waiver of immunity must be strictly construed in favor of the Commonwealth. *Cominelli v. Rector*

& *Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 719 (W.D. Va. 2008) (citing *Amaram*, 476 F. Supp. 2d at 540).

Plaintiff's Complaint does not allege compliance with Va. Code § 2.2–814(A). This section required Plaintiff to bring her claim to the President of VSU, the head of the institution of the Commonwealth responsible for the alleged act giving rise to her claim, prior to initiating the instant suit. *See Cominelli*, 589 F. Supp. 2d at 719. Plaintiff's assertion that she reported the reduction in salary to Dr. W. Weldon Hill, Dean of the School of Liberal Arts and Education, is insufficient to satisfy § 2.2–814(A). (Compl. at ¶ 9.) Plaintiff has given no indication that she presented Claim I to Dr. Hill. Even had she done so, Dr. Hill is not the head of the institution required by the statute. Since Plaintiff has failed to present any evidence of compliance with the statute, the Court lacks subject-matter jurisdiction over her claim.[9] Plaintiff's breach of contract claim will be dismissed with prejudice.

## B. Claim II: Creation and Maintenance of a Hostile Work Environment

Plaintiff further contends that VSU has violated Title VII by creating and maintaining a hostile work environment. Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009) (internal quotation marks and citation omitted). To properly state a *prima facie* case of a

---

[9] Having determined that Plaintiff's breach of contract action is barred by sovereign immunity, the Court need not reach the merits of the claim. However, it appears from the facts, viewed in the light most favorable to Plaintiff, that Plaintiff's breach of contract claim is also procedurally barred by the statute of limitations. *See* Va. Code §§ 8.01–246(2), (4).

hostile work environment based on race or gender, a plaintiff must show that the alleged conduct (1) was unwelcome, (2) resulted because of their race or gender, (3) was sufficiently severe or pervasive to alter the conditions of their employment, and (4) was imputable to their employer. *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009).

The Court is satisfied that Defendant's alleged conduct was unwelcome, given Plaintiff's numerous complaints to her superiors. However, "[t]he standard for proving a hostile work environment is intentionally set very high, in order to filter out complaints attacking the ordinary tribulations of the workplace." *Middlebrooks v. Winter*, No. WGC-05-3209, 2008 U.S. Dist. LEXIS 123312, at *87–88 (D. Md. March 19, 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted)).  Plaintiff must show that "but-for" her gender or race, she would not have been the victim of the unwelcome conduct. *Pueschel*, 577 F.3d at 565.

Plaintiff claims that the allegedly hostile work environment was created and maintained primarily by "Dr. Green" from 2007 into 2012.[10]  Plaintiff identifies herself as an African-American woman and alleges numerous difficulties she experienced in her workplace, some directly attributable to Dr. Green and others attributable to other VSU employees.  However, she alleges no facts supporting the conclusion that any harassment she experienced occurred because of her race or gender.  Plaintiff cites no instance in which Dr. Green or any other employee of VSU made reference to Plaintiff's race or gender.  *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010).

---

[10] Plaintiff provides neither Dr. Green's full name nor position at VSU.  The Court infers that Dr. Green is a female by Plaintiff's use of the pronoun "she" in reference to Dr. Green and that Dr. Green is a professor in a position superior to that of Plaintiff.  Dr. Green's race is unknown.

Plaintiff alleges that Dr. Green's purported harassment began immediately after Plaintiff was hired in 2007 and implies that Dr. Green's mistreatment of Plaintiff arose from Dr. Green's knowledge of the predicament that she placed Plaintiff in by changing her salary. (Compl. at ¶ 11.) Furthermore, Plaintiff alleges that during meetings, Dr. Green would angrily yell at anyone who had a different viewpoint. (*Id.* at ¶ 29.) Even viewing the facts in the light most favorable to Plaintiff, it seems that Plaintiff was not the sole target of Dr. Green's alleged harassment and that any alleged harassment directed toward Plaintiff stemmed from some source other than her race or gender. The facts alleged merely tell the story of an ongoing workplace dispute not attributable to Plaintiff's race or gender.[11] *See Bass v. E. I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Because Plaintiff has failed to offer facts raising a plausible inference that Defendant's purported conduct resulted from Plaintiff's race or gender, the Court finds that Plaintiff has failed to sufficiently allege a hostile work environment claim under Title VII. VSU's Motion will be granted with respect to Plaintiff's hostile work environment claim, and Claim II will be dismissed without prejudice.

## C. Claim III: Violation of the Equal Pay Act

Plaintiff alleges that Defendant has violated the EPA based on her assertion that "there are many other faculty professor [sic] at [VSU] who have received a salary of $72,500 per year; most of them are male and on friendly terms with Dr. Green." (Compl.

---

[11] It also appears that Plaintiff has failed to allege facts sufficient to demonstrate that the unwelcome conduct was sufficiently severe or pervasive as to alter the conditions of her employment, though the Court's decision does not rest on such finding. *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (internal quotation marks and citation omitted).

10

at ¶ 56.)  VSU urges the Court to dismiss Plaintiff's claim because she has failed to identify a male counterpart who is paid a higher salary than Plaintiff and to allege that the skills, effort, and responsibilities required of Plaintiff are substantially equal to those of that counterpart. (Def.'s Mem. in Supp. of Mot. to Dismiss at 16, ECF No. 5.)

The EPA prohibits employers from discriminating "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [they] pay[] wages to employees of the opposite sex" for work requiring "equal skill, effort, and responsibility, . . . performed under similar working conditions." 29 U.S.C. § 206(d)(1)(2000).  Plaintiff must prove that the skill, effort, and responsibility required in her job performance are substantially equal to those of a higher-paid male employee. *Wheatley v. Wicomico Cnty*, 390 F.3d 328, 334 (4th Cir. 2004) (citations omitted).

While the EPA does not demand that plaintiffs identify with specificity a single individual, plaintiffs cannot indiscriminately aim at all similarly-employed male counterparts collectively. *Id.*  The Court must examine the specific skills, effort, and responsibilities required of each employee. *Id.*  It is insufficient that Plaintiff and other male "faculty professors" have similar titles and similar generalized responsibilities; the skills, effort and responsibility must be substantially equal. *Id.*  The comparison to the male employee(s) must be made "factor by factor" and cannot be made to "a hypothetical male with a composite average of a group's skill, effort, and responsibility." *Id.* (internal quotation marks and citation omitted).

Plaintiff identifies herself as an "Associate Professor of Administrative and Organizational Leadership at the [VSU] Graduate and Professional Education Program."

(Compl. at ¶ 2.)  Plaintiff has alleged only that there exist "faculty professors" at VSU who receive a higher salary than Plaintiff and that some of those professors are male.  (*Id.* at ¶ 56.)  Plaintiff has made no reference to the skills, effort, and responsibilities required of her as an "Associate Professor" or to those of the male professors who she alleges receive a greater salary.  Therefore, no comparisons of their respective skills, effort, and responsibilities can be made.

Since Plaintiff has failed to plead facts sufficient to show that the skills, effort, and responsibilities required of Plaintiff and the male professors are substantially equal, the Court finds that Plaintiff has failed to sufficiently allege an EPA violation.  Defendant's Motion to Dismiss will be granted with respect to Plaintiff's Equal Pay Act claim.  Accordingly, Claim III will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that it lacks subject-matter jurisdiction over Plaintiff's breach of contract action, and Plaintiff has failed to plead facts sufficient to state claims for creation and maintenance of a hostile work environment and violation of the Equal Pay Act.  Accordingly, VSU's Motion to Dismiss will be granted.  Plaintiff's breach of contract claim will be dismissed with prejudice.  Plaintiff's Title VII claims will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                            Henry E. Hudson
                                            United States District Judge

Date: Feb. 6, 2013
Richmond, Virginia

12